**O**

**JS-6**

# United States District Court
# Central District of California

| | |
|---|---|
| ROCIO DUARTE, an individual and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>   v.<br><br>JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, a federally chartered bank,<br><br>                Defendant. | Case № 2:21-cv-01907-ODW (AFMx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION [18]** |

## I.   INTRODUCTION

Plaintiff Rocio Duarte is suing her former employer, Defendant JPMorgan Chase Bank, National Association ("Chase") for violations of various provisions of the wage-and-hour provisions of the California Labor Code.  Before the Court is Chase's Motion to Compel Arbitration.  (Mot. Compel Arbitration ("Mot."), ECF No. 18.)  For the reasons that follow, Chase's Motion is **GRANTED**.[1]

---

[1] After carefully considering the papers filed in connection with the Motions, the Court deems the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.   BACKGROUND

Chase is a federally chartered bank with its main office in Columbus, Ohio. (Notice of Removal Ex. D ("Articles of Association"), ECF No. 1-4.)  On August 14, 2019, by way of an offer letter signed by Chase's CEO, Chase extended to Duarte an offer to work as an associate banker at one of its California locations.  (Decl. of Charles Van Valkenburg ("Van Valkenburg Decl.") ¶ 5, Ex. A ("Offer Letter"), ECF No. 18-3.)

The second page of the Offer Letter contained a section titled "Terms & Conditions" which stated that the offer was "subject to all the terms, conditions and attachments included in this document, the Binding Arbitration Agreement and all Chase policies and procedures."  (*Id.* at 4.)  Included with the Offer Letter was an appendix approximately nine pages long.  (*See id.* at 5–14.)  Approximately five of those pages were devoted to the terms of an arbitration agreement headlined with the words "Binding Arbitration Agreement" in bold font.  (*See id.* at 7–12.)  The Binding Arbitration Agreement ("Agreement") purported to bind both Chase and Duarte to final arbitration for "all legally protected employment-related claims" including "violations of . . . common law, federal, state, or local statute, ordinance, regulation or public policy."  (*Id.* at 8.)  It also stated that arbitration would be governed by the Employment Arbitration Rules of the AAA ("AAA Rules").  (*See id.* at 9.)  The Agreement did not include a copy of the AAA Rules, but it did provide the website where the AAA Rules are located.  (*See id.*)

The Offer Letter anticipated an August 28, 2019 start date and stated, "If you do not accept the offer within a reasonable timeframe from the date of delivery, we will consider it withdrawn."  (*Id.* at 3.)

Duarte electronically signed the Offer Letter on August 14, 2019, the same day she received it.  (*See id.* at 15.)  Two weeks later, on August 28, 2019, she began working for Chase.  (Van Valkenburg Decl. ¶ 4.)  Her employment with Chase ended sometime in late 2020.  (Notice of Removal Ex. A ("Compl.") ¶ 9, ECF No. 1-1.)

Duarte now asserts nine causes of action against Chase under the California Labor Code and California Business and Professions Code for: (1) failure to pay wages for all hours worked, (2) failure to pay overtime wages, (3) failure to provide meal periods, (4) failure to provide rest periods, (5) failure to furnish accurate itemized wage statements, (6) failure to pay wages due upon separation of employment, (7) failure to provide paid sick time, (8) failure to maintain accurate records concerning shift times and meal times, and (9) engaging in unfair competition. (*See id.* ¶¶ 18–60.)  In response, Chase moves to compel arbitration pursuant to its rights under the Agreement.  (*See* Mot.)  The Motion is fully briefed.  (Opp'n, ECF No. 19; Reply, ECF No. 20.)

### III.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs a contract dispute relating to an arbitration provision if the contract affects interstate commerce. *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273–74 (1995).  When it applies, the FAA restricts a court's inquiry into compelling arbitration to two threshold questions: (1) whether there was an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute.  *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (citation omitted).  If the answer to both questions is yes, the FAA requires the Court to enforce the arbitration agreement according to its terms.  *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999).  However, the FAA includes a "savings clause" that allows for the invalidation of an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract."  This "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation marks omitted).

## IV.   DISCUSSION

As a preliminary matter, Chase asks the Court to take judicial notice of a state court order compelling arbitration in an unrelated case, (ECF No. 18-4), and Duarte asks the Court to take judicial notice of a Statement of Information Chase filed with the California Secretary of State, (ECF No. 19-1).  The Court does not find it necessary to rely on these documents to resolve the instant Motion and accordingly does not take judicial notice of them.

Substantively, Duarte makes two arguments opposing Chase's Motion to Compel Arbitration.  (*See* Opp'n.)  First, Duarte argues that California law applies and does not recognize agreements mandating arbitration for wage-and-hour claims.  (*See id.* at 9–12.)  Second, Duarte argues that the Agreement is unconscionable and therefore unenforceable.  (*See id.* at 12–26.)  Duarte is incorrect on both counts.

### A.   Validity of the Agreement

Duarte does not challenge the validity of the Agreement on contract formation grounds.  Both parties agree that Chase presented the Offer Letter containing the Agreement to Duarte, Duarte signed it, and Chase thereafter employed her.  (*See* Motion 1; Opp'n 7–8.)  Nor does Duarte challenge the applicability of the Agreement, which purports to cover "all legally protected employment-related claims," to all her claims in the current dispute.  (*See generally* Opp'n.)  Instead, Duarte argues that California law invalidates the Agreement.  (*See id.* at 9–10.)  This argument fails because the FAA governs the Agreement, and the FAA preempts the California law Duarte relies on.

#### 1.   The FAA Governs the Agreement

Section 2 of the FAA "makes enforceable a written arbitration provision in 'a contract *evidencing* a transaction *involving* commerce.'" *Allied-Bruce*, 513 U.S. at 268. (quoting 9 U.S.C. § 2).  The Supreme Court has interpreted the broad language of the FAA as signaling Congress' intent "to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause." *Perry v. Thomas*, 482 U.S. 483, 490 (1987).  Therefore, an arbitration agreement is no less enforceable than any

1   other contractual clause as long as the contract it is a part of "affect[s] commerce."

2   *Allied-Bruce*, 513 U.S. at 273–74.

3       Chase states that it operates more than four thousand branches in thirty-eight

4   states, (Mot. 5), and Duarte does not dispute this general claim. Rather, Duarte asserts

5   that Chase must prove that her employment affected interstate commerce and has failed

6   to do so. (*See* Opp'n 11–12.)

7       The clear inference from evidence on the record is that Duarte's employment did,

8   in fact, affect interstate commerce. Chase asserts that banking associates like Duarte

9   regularly interact with accounts and customer information generated outside of

10  California. (*See* Reply 3.) The evidence confirms Duarte worked in California as an

11  associate banker for a federally chartered national bank whose main office is in Ohio.

12  (*See* Articles of Association 1; Offer Letter 13[2] (listing, in statutorily required pay

13  information notice, Chase's "Entity Type" as "National Banking Association").)

14  Especially in the absence of evidence to the contrary, it takes no speculation to conclude

15  that, during her employment, Duarte, like other bank associates, interacted with

16  customers and accounts outside of California. *See Maxum Founds., Inc. v. Salus Corp.*,

17  779 F.2d 974, 978 n.4 (4th Cir. 1985) (refusing, where party seeking arbitration under

18  FAA asserts contract affects interstate commerce and party opposing arbitration "does

19  not come forward with evidence to rebut" that assertion, to "read into the Act a

20  requirement of further proof" by party invoking FAA).

21      Duarte primarily relies on *Hoover v. Am. Income Life Ins. Co.*, 206 Cal. App. 4th

22  1193 (2012) for her assertion that the FAA does not govern the Agreement. As a

23  preliminary matter, *Hoover* is a California case, and its interpretation of the reach of the

24  FAA is not binding upon the Court. *Wyant v. City of Lynnwood*, 621 F. Supp. 2d 1108,

25  1113 (W.D. Wash. 2008) ("When a state court interprets federal law, its decision does

26  not bind a federal court."). Moreover, *Hoover* is distinguishable. In *Hoover*, the facts

27

28  _____

    [2] In this Order, the Court cites to specific pages of the Offer Letter using the page numbers as printed at the bottom of the Exhibit.

1   established only that the defendant employer was based in Texas and that the plaintiff

2   employee worked in California.  206 Cal. App. 4th at 1207.  In deciding that the FAA

3   did not govern their employment agreement, the California Court of Appeal noted that

4   the defendant employer "did not work in other states or engage in multimillion dollar

5   loan activity that affected interstate commerce" and was "not . . . a national stock

6   brokerage firm or . . . a member of a national stock exchange."  *Id.* at 1207, 1208.  The

7   evidence therefore did not indicate that the defendant was engaged in substantial

8   interstate commerce.  *Id.*  Chase, by contrast, is a national bank, and the parties do not

9   dispute that Chase is engaged in substantial interstate commerce or that the work of

10  bankers who interface with Chase accounts and customers does not affect interstate

11  commerce.

12         Moreover, to the extent *Hoover*, a state appellate-level case, suggests the

13  relationship between a single employee and his or her employer must have "a specific

14  effect or bearing on interstate commerce in a substantial way," *id.* (quotation marks,

15  brackets, and citation omitted), the Court disagrees.  The Supreme Court has taken an

16  expansive view of the Commerce Clause, stating that "Congress' Commerce Clause

17  power may be exercised in individual cases without showing any specific effect upon

18  interstate commerce if in the aggregate the economic activity in question would

19  represent a general practice subject to federal control."  *Citizens Bank v. Alafabco, Inc.*,

20  539 U.S. 52, 57 (2003) (quotation marks, ellipsis, and citation omitted).  Courts in other

21  jurisdictions have therefore concluded that as long as an employer's "overall

22  employment practices affect commerce, the Commerce Clause requirement is satisfied"

23  with respect to the FAA's application to an individual employment contract.  *Caley v.*

24  *Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1370 (11th Cir. 2005); *see also Chambers*

25  *v. Groome Transp. of Ala.*, 41 F. Supp. 3d 1327, 1342 (M.D. Ala. 2014) (ruling FAA

26  covered employment contract even when employees' responsibilities were confined to

27  intra-state shuttle bus services, where employees did not counter employer's assertion

28  that its "general practice of employment" involved interstate commerce).

1          Other courts have gone further, holding that "the relationship between an
2    employer who is regularly engaged in activities related to interstate commerce and its
3    employees is affected by interstate commerce as a matter of law and implicates
4    commerce clause issues." *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 880 (Tex.
5    App. 2005).  Still others, including the Ninth Circuit in an unpublished opinion, have
6    suggested that an employment contract between an employee and an out-of-state
7    employer, by itself, constitutes a transaction involving interstate commerce. *See Wulfe*
8    *v. Valero Ref. Co.-Cal.*, 641 F. App'x 758, 760 (9th Cir. 2016) ("[Plaintiff] and
9    [defendant's] employment relationship undoubtedly involves interstate commerce:
10   [plaintiff], a citizen of California, was employed by [defendant], a citizen of Texas, as
11   an oil refinery operator at one of [defendant's] California facilities."); *State ex rel. Alst*
12   *v. Harrell*, 528 S.W.3d 442, 446 (Mo. Ct. App. 2017) ("Because [employees] are
13   residents of Missouri, and [employer] is a New York corporation registered to do
14   business in Missouri, the [arbitration agreement] involves interstate commerce and is
15   subject to the FAA.").

16          Here, the Court finds it sufficient that Chase is a federally chartered bank that is
17   headquartered out-of-state and is engaged in interstate commerce, and that Duarte was
18   employed in-state in a position that typically involves executing transactions across
19   state lines, retrieving and managing out-of-state records, and interacting with out-of-
20   state clients, with no evidence to the contrary.  Duarte's employment affected interstate
21   commerce, and accordingly, the FAA governs the operative Agreement.

22          *2.      The FAA Preempts California Labor Code Section 229*

23          Duarte argues California Labor Code section 229 prevents the Court from
24   compelling arbitration of her claims.  (*See id.* at 9–10.)   Section 229 states that
25   "[a]ctions . . . for the collection of due and unpaid wages claimed by an individual may
26   be maintained without regard to the existence of any private agreement to arbitrate."
27   This argument is mooted because, when it applies, "the Federal Arbitration Act
28   preempts § 229 of the California Labor Code." *Perry v. Thomas*, 482 U.S. 483, 492

1  (1987).  Because the Federal Arbitration Act governs the Agreement in this case, Labor

2  Code section 229 is preempted and has no effect.

3  **B.    Unconscionability**

4    Duarte argues that the Agreement is unenforceable because it is unconscionable.

5  (Opp'n 12–26.)  Pursuant to the FAA's savings clause, courts use state law to analyze

6  generally applicable contract defenses such as unconscionability.    9 U.S.C. § 2;

7  *Concepcion*, 563 U.S. at 339.

8    Under California law, unconscionability has a procedural component and a

9  substantive component.  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.

10  4th 83, 114 (2000).  Procedural unconscionability "addresses the circumstances of

11  contract negotiation and formation, focusing on oppression or surprise due to unequal

12  bargaining power." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dec., LLC*, 55 Cal.

13  4th 223, 246 (2012).  Substantive unconscionability focuses on whether the contract's

14  terms are "overly harsh" or "one-sided." *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th

15  899, 910 (2015).

16    "Both procedural and substantive unconscionability must be shown for the

17  defense to be established, but 'they need not be present in the same degree.'" *OTO,*

18  *L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019) (quoting *Armendariz*, 24 Cal. 4th at 114).

19  "Instead, they are evaluated on a 'sliding scale'" under which the more procedural

20  unconscionability there is, the less substantive unconscionability is required, and vice-

21  versa. *Id.*  "The ultimate issue in every case is whether the terms of the contract are

22  sufficiently unfair, in view of all relevant circumstances, that a court should withhold

23  enforcement." *Sanchez*, 61 Cal. 4th at 912.  "The burden of proving unconscionability

24  rests upon the party asserting it." *Kho*, 8 Cal. 5th at 125 (citing *Sanchez*, 61 Cal. 4th

25  at 911).

26    *1.    Procedural Unconscionability*

27    Procedural unconscionability analysis "begins with an inquiry into whether the

28  contract is one of adhesion." *Armendariz*, 24 Cal. 4th at 113.  "An adhesive contract is

1   standardized, generally on a preprinted form, and offered by the party with superior

2   bargaining power 'on a take-it-or-leave-it basis.'" *Kho*, 8 Cal. 5th at 126.  Although not

3   dispositive, "the adhesive nature of the contract is sufficient to establish some degree

4   of procedural unconscionability." *Sanchez*, 61 Cal. 4th at 915.

5          Here, Duarte's employment contract, like most employment contracts, was

6   adhesive.  Chase suggests that Duarte may have been able to negotiate the contract, (*see*

7   Reply 6), but the Offer Letter suggests otherwise.  (*See* Offer Letter 3 (indicating, on

8   first page, that "[i]f you do not accept the offer within a reasonable timeframe from the

9   date of delivery, we will consider it withdrawn").)  The offer presented Duarte with

10  only two options: accept within a reasonable time, or forfeit the offer.  As such, the

11  employment contract was one of adhesion, and the circumstances surrounding Duarte's

12  acceptance of the contract support a degree of procedural unconscionability.

13         In addition to the adhesive nature of a contract, two more factors may support

14  procedural unconscionability: oppression and surprise.  *Pinnacle*, 55 Cal. 4th at 246.

15  "Oppression occurs where a contract involves a lack of negotiation and meaningful

16  choice, surprise where the allegedly unconscionable provision is hidden within a prolix

17  printed form." *Id.*

18         When considering oppression, courts consider "(1) the amount of time the party

19  is given to consider the proposed contract; (2) the amount and type of pressure exerted

20  on the party to sign the proposed contract; (3) the length of the proposed contract and

21  the length and complexity of the challenged provision; (4) the education and experience

22  of the party; and (5) whether the party's review of the proposed contract was aided by

23  an attorney." *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App.

24  4th 1332, 1348 (2015) (footnote omitted).  Here, Chase gave Duarte a "reasonable

25  timeframe" to accept the offer.  (*See* Offer Letter 3.)  Although Duarte accepted the

26  offer the same day she received it, she was not required to do so, and Duarte has

27  presented no other evidence showing that the timeframe afforded her was not

28  reasonable.  (*See id.*)  Moreover, because the Offer Letter was mailed to her, Duarte

1    could consider the offer in private and without pressure.  Indeed, the record lacks

2    indication that any Chase employee pressured Duarte to sign the Offer Letter.  Duarte

3    complains that she is not a lawyer, and that she was not aided by a lawyer, but nothing

4    suggests Duarte was prevented from seeking the advice of counsel if she desired.

5         After considering the circumstances of the offer, the Court does not find that the

6    manner in which Chase presented the Agreement to be oppressive.

7         Duarte additionally argues that surprise resulted because the Agreement

8    incorporated the AAA Rules but Chase failed to provide her with a copy of the Rules.

9    (Opp'n 19–21.)  This argument lacks merit.  The failure to attach a copy of arbitration

10   rules does not, by itself, support a finding of surprise, especially when, as here, the rules

11   are readily available via a website referenced in the arbitration agreement.  *See Lane*,

12   224 Cal. App. 4th at 691 ("There could be no surprise, as the arbitration rules referenced

13   in the agreement were easily accessible to the parties—the AAA rules are available on

14   the Internet."); *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1472 (2013)

15   ("[T]he failure to attach the AAA rules, standing alone, is insufficient grounds to

16   support a finding of procedural unconscionability."). Nor is this case like those where

17   California courts have found surprise when a party incorporates a set of rules to hide an

18   unfair provision.  *See Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1405–06 (2003)

19   (finding procedural unconscionability in the incorporation of the Better Business

20   Bureau arbitration rules, which precluded the award of tort damages and punitive

21   damages and thus resulted in a "nasty shock").  Here, Duarte does not allege unfairness

22   in the AAA Rules.

23        In sum, although Duarte has demonstrated some procedural unconscionability

24   stemming from the adhesive nature of the employment contract containing the

25   Agreement, she has failed to otherwise demonstrate oppression or surprise.  Therefore,

26

27

28

1  Duarte must establish a high degree of substantive unconscionability to avoid
2  arbitration.

3          *2.      Substantive Unconscionability*

4        California law provides that, to avoid a finding of substantive unconscionability,
5  an employment arbitration agreement must: "(1) provide[] for neutral arbitrators,
6  (2) provide[] for more than minimal discovery, (3) require[] a written award,
7  (4) provide[] for all of the types of relief that would otherwise be available in court, and
8  (5) . . . not require employees to pay either unreasonable costs or any arbitrators' fees
9  or expenses as a condition of access to the arbitration forum."[3] *Armendariz*, 24 Cal. 4th
10  at 102 (quotation marks and citation omitted).  Duarte does not contend that the
11  Agreement violates the first four of these requirements.  Rather, she argues that the
12  Agreement violates the fifth requirement by only offering to pay for "ordinary and
13  reasonable administrative expenses of the arbitration" and not *all* costs uniquely
14  associated with arbitration.  (*See* Opp'n 10; Offer Letter 10.)

15        The Court finds this argument unconvincing.  In addition to offering to pay for
16  ordinary and reasonable costs of arbitration, the Agreement also states: "Nothing in this
17  Agreement is intended or should be construed to require employees to bear any type of
18  expense that they would not otherwise bear if the Parties were to litigate a Covered
19  Claim in a court of law." (Offer Letter 11.)  Because Duarte has failed to point to any
20  cost unique to arbitration that would arguably fall outside of this provision, she has
21  failed to meet her burden of showing substantive unconscionability on this basis.  *See*
22  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000) ("[A] party seek[ing]
23  to invalidate an arbitration agreement on the ground that arbitration would be
24  prohibitively expensive . . . bears the burden of showing the likelihood of incurring such
25  costs.").

26

27  [3] "In the wake of *Concepcion*, California courts . . . have found that *Armendariz* is still good law,
relying on the Supreme Court's affirmation of the principle that the savings clause of the FAA permits
28  application of state law contract defenses such as unconscionability in the context of arbitration
agreements." *Castillo v. CleanNet USA, Inc.*, 358 F. Supp. 3d 912, 937 (N.D. Cal. 2018).

1    Aside from the five requirements in *Armendariz*, Duarte argues the Agreement is
2    unconscionable because it allows Chase to unilaterally modify the Agreement without
3    also giving Duarte this right.  (Opp'n 22–23.)  This Court joins the courts that have
4    found that recent California Court of Appeal decisions upholding unilateral
5    employment contract modification provisions render obsolete prior law on this issue,
6    including *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003).
7    *Borgarding v. JPMorgan Chase Bank*, No. 16-CV-02485-FMO (RAOx), 2016 WL
8    8904413, at *8–9 (C.D. Cal. Oct. 31, 2016) ("*Ingle*'s holding on unilateral modification
9    provisions no longer accurately describes California law."); *see also Ridgeway v.*
10   *Nabors Completion & Prod. Servs. Co.*, 725 F. App'x 472, 474 (9th Cir. 2018) (finding
11   portion of arbitration agreement allowing employer to unilaterally modify agreement
12   "not unconscionable because there is an implied covenant of good faith and fair
13   dealing"); *Ashbey v. Archstone Prop. Mgmt., Inc.*, 612 F. App'x 430, 432 (9th Cir.
14   2015) (same).  Thus, the modification provision on page 12 of the Agreement reserving
15   to Chase the "right to amend, modify or discontinue this Agreement at any time in its
16   sole discretion to the extent permitted by applicable law" is not unconscionable.

17       Duarte credibly argues that one provision in the Agreement is unenforceable.
18   The challenged provision states that the parties "waive any right with respect to any
19   Covered Claims to submit, initiate, or participate in a representative capacity or as a
20   plaintiff, claimant or member in a class action, collective action, or other representative
21   or joint action, regardless of whether the action is filed in arbitration or in court."  (Offer
22   Letter 9.)  This provision is unenforceable because controlling case law precludes Chase
23   from enforcing the waiver of claims under the Private Attorney Generals Act
24   ("PAGA"), a type of representative action.  *See Sakkab v. Luxottica Retail N. Am., Inc.*,
25   803 F.3d 425, 440 (9th Cir. 2015) (ruling that FAA does not preempt California rule
26   barring waiver of representative claims under PAGA).  Thus, to the extent the
27   Agreement's representative claim waiver prevents Duarte from asserting PAGA claims,
28   it is unenforceable.

1      *3.      Severability*

2      The remaining issue is whether the Court should sever the PAGA waiver rather

3   than refuse to enforce the remainder of the Agreement.  In determining whether to sever

4   an unenforceable provision or to invalidate the entire contract, courts "look to the

5   various purposes of the contract."  *Armendariz*, 24 Cal. 4th at 124.  "If the central

6   purpose of the contract is tainted with illegality, then the contract as a whole cannot be

7   enforced.  *Id.*  "If," on the other hand, "the illegality is collateral to the main purpose of

8   the contract, and the illegal provision can be extirpated from the contract by means of

9   severance or restriction, then such severance and restriction are appropriate."  *Id.*  The

10  two main reasons for severing rather than voiding an entire contract are (1) "to prevent

11  parties from gaining undeserved benefit or suffering undeserved detriment as a result

12  of voiding the entire agreement" and (2) to "conserve a contractual relationship if to do

13  so would not be condoning an illegal scheme."  *Id.* at  123–24.

14      Here, the PAGA waiver is collateral to the main purpose of the contract.  It can

15  be severed and disregarded without loss of the essence of either the arbitration clause

16  or the Agreement as a whole.  Moreover, its presence does not render illegal the basic

17  purpose of the employment contract or the arbitration clause.  That Chase is not seeking

18  to enforce it supports this conclusion.  Because the PAGA waiver can be severed

19  without affecting the central purpose of the Agreement, the Court severs the PAGA

20  waiver and enforces the remainder of the Agreement.

21  **C.      Dismiss or Stay**

22      Lastly, the Court considers whether to stay the action or dismiss the case without

23  prejudice.  In the Ninth Circuit, a district court has discretion to dismiss a party's

24  complaint where it finds that an arbitration clause covers all of the party's claims.  *See,*

25  *e.g.*, *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014)

26  (affirming dismissal of action without prejudice where "all of the claims raised in the

27  action [we]re subject to arbitration" (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d

28

635, 638 (9th Cir. 1988))).    Here, because all of Duarte's claims are subject to arbitration, the Court in its discretion **DISMISSES** this action **without prejudice**.

**V.    CONCLUSION**

Chase's Motion to Compel Arbitration is **GRANTED**.  (ECF No. 18.)  The Court **SEVERS** the waiver of PAGA claims from the Arbitration Agreement and enforces the remainder of the Agreement by **ORDERING** this matter to arbitration.  All dates and deadlines are hereby **VACATED**, and this action is **DISMISSED WITHOUT PREJUDICE**.  The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**


November 15, 2021


_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**